# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KEITH TURNER, | * | |
| | * | |
| Plaintiff | * | |
| | * | Civ. No. MJM-22-0476 |
| v. | * | |
| | * | |
| CAPTAIN T. WRIGHT, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Keith Turner ("Plaintiff") brings this action under 42 U.S.C. § 1983 against defendants Department of Public Safety and Correctional Services, Carolyn Scruggs, Phil Morgan, Robert Dean Jr., Captain T. Wright, Officer Olusegun Odufoye, Sergeant Olatunji, Officer Dameriz Myles, Lieutenant William Bunn, Lieutenant Emmanuel Dabiri, Sergeant Hendricks, Sergeant Fred Hinneh, and John Does 1–10 (collectively, "Defendants"). Am. Compl. (ECF No. 36). Plaintiff's alleges unconstitutional conditions of confinement at Jessup Correctional Institution ("JCI"). *Id.* ¶ 1.

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint or, in the Alternative, Motion for Summary Judgment (the "Motion"). ECF No. 43. The Motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Motion shall be granted in part and denied in part.

## I.     FACTUAL BACKGROUND

On December 8, 2021, defendant Captain Wright assigned Plaintiff to administrative

segregation in cell B-D403 at JCI. Am. Compl. ¶ 22. When Plaintiff entered the cell, he noticed the heater was broken and leaking water onto the floor. *Id.* Plaintiff informed defendant Officer Olatunji about the heater, and Officer Olatunji said he would put in a work order for the heater. *Id.* A work order was not put in, and Plaintiff dealt with a cell with no heater from December 8, 2021, to February 17, 2022, despite making multiple requests to various officers. *Id.* ¶¶ 23–39. While lacking heat in his cell for months, Plaintiff had to clean the leaking water off the floor every hour to avoid getting his possessions wet. *Id.* ¶ 25. Plaintiff used meal trays, towels, and other materials to mop up the water and repeatedly asked correctional officers for more materials to help dry his cell. *Id.* ¶ 27. On January 31, 2022, Plaintiff filed a Maryland Division of Correction Informal Inmate Complaint Form with the Division of Correction Administrative Remedy Unit to attempt to have the heater repaired. *Id.* ¶ 28.

At some point in early 2022, Plaintiff was assigned a cellmate, which worsened conditions in the cell because the water puddle left limited space for Plaintiff and the cellmate to move around and to keep their belongings dry. *Id.* ¶ 29. Plaintiff's cellmate also told Plaintiff to stop waking up so often to mop up the water puddle, so the puddle increased in size on the floor of the cell. *Id.* ¶ 30. On February 3, 2022, Plaintiff woke up and moved to clean the pooling water from the heater. *Id.* ¶ 31. Plaintiff stepped into the puddle and was apparently electrocuted as a result of the water reaching an extension cord that was plugged into the wall. *Id.* After being electrocuted, Plaintiff immediately reported the incident to defendant Officer Odufoye. *Id.* ¶ 32. Officer Odufoye informed Plaintiff that he would call for medical assistance, but only after breakfast. *Id.* Despite reminding Officer Odufoye after breakfast, and asking several officers multiple times over the following days, medical assistance was never rendered to Plaintiff. *Id.* ¶ 35. These officers

included defendants Tyler Wright, Aliu Olatunji, Dameriz Myles, William Bunn, Emmanuel Dabiri, Fred Hinneh, and Odufoye.

On February 3, 2022, Plaintiff submitted a Request for Administrative Remedy to Sergeant Hendricks describing his living conditions and electrocution, but Sergeant Hendricks did not submit the form. *Id.* ¶ 38. After being informed that his form was "misplaced," Plaintiff filed another on March 3, 2022. *Id.* Plaintiff also submitted another Administrative Remedy form stating he had been electrocuted and not given medical attention. *Id.* ¶ 39. Plaintiff has since been transferred to Western Correctional Institution, a maximum-security prison, although Plaintiff requires only medium security. *Id.* ¶ 41.

## II.    PROCEDURAL BACKGROUND

On March 8, 2022, Plaintiff filed his original Complaint *pro se*, alleging inhumane conditions and lack of medical treatment. ECF No. 1. On November 22, 2022, Defendants filed a Motion to Dismiss. ECF No. 19. The Court issued an Order denying Defendant's Motion to Dismiss, on June 28, 2023, ECF No. 31, and later appointed pro bono counsel to represent Mr. Turner, ECF No. 32.

On August 28, 2023, Plaintiff, through counsel, filed an Amended Complaint with seven counts: (I) Eighth Amendment conditions of confinement violation against Tyler Wright, Aliu Olatunji, Olusegun Odufoye, William Bunn, Emmanuel Dabiri, and Fred Hinneh in their individual capacities; (II) Eighth Amendment conditions of confinement violation against Wright, Olatunji, Odufoye, Bunn, Dabiri, and Hinneh in their official capacities; (III) Eighth Amendment conditions of confinement violation against Carolyn Scruggs, Phil Morgan, Robert Dean, and the Department of Public Safety and Correctional Services ("DPSCS"); (IV) Eighth Amendment inadequate medical care violation against Dameriz Myles and Olusegun Odufoye in their

individual capacities; (V) Eighth Amendment inadequate medical care violation against Myles and Odufoye in their official capacities; (VI) Eighth Amendment inadequate medical care violation against Scruggs, Morgan, Dean, and DPSCS; and (VII) First Amendment retaliation claim against all defendants[1] in their official and individual capacities.

On December 11, 2023, Defendants filed a Motion to Dismiss the Amended Complaint, or in the Alternative, Motion for Summary Judgment. On February 27, 2024, Plaintiffs filed an Opposition to Defendants' Motion. On April 12, 2024, Defendants filed a Reply to Plaintiffs Opposition to the Defendants' Motion.

## III.   STANDARD OF REVIEW

### A.  Motion to Dismiss

Under Rule 8(a)(2) of Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the]

---

[1]     In addition to the aforementioned defendants, the Amended Complaint also lists as defendants Sergeant Hendricks and John Does 1 through 10.

4

actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Ordinarily, a court "is not to consider matters outside the pleadings or to resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may consider matters outside the pleadings attached to a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

The Fourth Circuit "has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery." *Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278, at *4 (D. Md. Mar. 28, 2022) (citing *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)). "[W]here the parties have not had an opportunity for reasonable discovery," summary

judgment is inappropriate. *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011) (citation omitted). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed have notice that conversion under Rule 12(d) may occur, and the court need not "notify parties of the obvious." *Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). The party opposing conversion may file a declaration pursuant to Rule 56(d) explaining the reasons why "it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002).

### B.  Motion for Summary Judgment

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis removed).

A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus.*, 475 U.S. at 587, but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249. Pursuant to Fed. R. Civ. P. 56(e)(3), summary judgment may be granted "[i]f [the nonmovant] fails to properly support an assertion of fact or fails to properly address [the movant's] assertion of fact as required by Rule 56(c)[,]" and the movant establishes entitlement to judgment as a matter of law.

The nonmovant cannot "complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a [Fed. R. Civ. P. 56(d)] affidavit." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). A Rule 56(d) affidavit specifies reasons the non-moving party "cannot present facts essential to justify its opposition[]" to a summary judgment motion. Fed. R. Civ. P. 56(d). "[F]ailure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd.*, 302 F.3d at 244.

## IV.    DISCUSSION

### A.  Exhaustion of Administrative Remedies

Defendants argue in their Motion that the instant suit is barred by Plaintiff's failure to properly exhaust his administrative remedies. ECF No. 43-1 at 9–12; ECF No. 55 at 3–6. Plaintiff's dispute Defendants' contention, arguing that Plaintiff did exhaust what administrative remedies were available to him and, in the alternative, that there were no available remedies. ECF No. 52 at 11–16. Plaintiff further argues that the Court should not dismiss Plaintiff's claims for failure to exhaust because he requires further discovery to oppose Defendants' motion. *Id.* at 10–11; *see also* ECF No. 52-1 (Rule 56(d) declaration). Based on facts alleged in the Amended Complaint, Plaintiff's Rule 56(d) declaration, and documents presented to the Court, I find that it would be inappropriate for the Court to decide the extent to which administrative remedies were available to Plaintiff or the extent to which he exhausted them without giving the parties an opportunity for reasonable discovery. For reasons explained below, Defendant's Motion will be denied as to the question of exhaustion.

### 1.  PLRA's Exhaustion Requirement

A prisoner filing suit under 42 U.S.C. § 1983 must first exhaust the administrative remedies available for his or her claims. *See Ross v. Blake*, 578 U.S. 632, 638 (2016). The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust

administrative remedies is an affirmative defense to be pleaded and proven by the defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F. 3d at 729; *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 91 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Although the PLRA requires the prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland state prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). This procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a). Regulations promulgated by

DPSCS concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file an ARP form with the Inmate Grievance Office ("IGO") against any DOC official or employee. *See* C.S. § 10-206(a). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. If the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP request with his facility's "managing official." COMAR 12.02.28.05(D)(1). "Managing official" is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for the management of a correctional facility" and defined under C.S. § 1-101(m) as "the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5). If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[2] When filing with the

---

[2]     If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.   COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing . . . ." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).

### 2.  Defendants' Motion for Summary Judgment on Exhaustion

The Court finds that it would be improper to convert Defendants' Motion from a motion to dismiss to one for summary judgment on the matter of administrative exhaustion.

As noted above, Defendants have attached several exhibits to their motion and reply memoranda, including DPSCS forms and documents as well as four declarations from DPSCS officials attesting to the presence or absence of DPSCS records relating to Plaintiff's use of the ARP process. ECF Nos. 43-2, 55-1, 55-2, 55-3, 55-4, 56-1. Defendants contend that these exhibits establish Plaintiff's failure to properly exhaust his administrative remedies on the claims asserted in this action. ECF No. 43-1 at 9 – 12; ECF No. 55 at 3–6. Additionally, Defendants style their Motion in the alternative as a motion for summary judgment. ECF No. 43. Defendants' filing is adequate to provide notice to Plaintiff that the Motion could be treated as a summary judgment motion. In response, however, Plaintiff submits the declaration of his counsel pursuant to Fed. R. Civ. P. 56(d) attesting to Plaintiff's need for discovery in order to lodge an effective opposition to Defendants' presentation of evidence and arguments for summary judgment.

In his Rule 56(d) declaration, Plaintiff's counsel specifies the need for discovery related to the availability of the administrative remedy process, correspondence and grievances received by

DOC from Plaintiff, any responses from prison officials, and other communications regarding the ARP process. ECF No. 52-1, ¶ 7. Plaintiff alleges in the Amended Complaint that he submitted several complaints about his conditions of confinement and denial of medical attention in January and March 2022, including an informal complaint form and multiple requests for administrative remedy. Am. Compl. ¶¶ 37–39. Prior to the appointment of pro bono counsel, Plaintiff, acting pro se, submitted a copy of his informal complaint form to the Court, as well as the request for administrative remedy dated from March 2022 and a letter from Plaintiff stamped received by DOC in August 2022. ECF No. 25-1. In the Amended Complaint, Plaintiff alleges that Defendants failed to act on his complaints, misplaced an ARP form he submitted in at least one instance, and, in some instances, summarily declined to consider the merits his complaints. Am. Compl. ¶¶ 37–40.

In consideration of the allegations in the Amended Complaint and the documents submitted by Plaintiff as well as the ARP records submitted by Defendants, the Court finds Plaintiff's Rule 56(d) declaration sufficient to demonstrate Plaintiff's need for further discovery to oppose Defendants' summary judgment arguments. Specifically, Plaintiff has adequately demonstrated a need for discovery as to whether the ARP process as prescribed by law was available to him in his efforts to seek redress for his conditions of confinement and inadequate medical care, as alleged in the Amended Complaint. Because Plaintiff has not yet had an opportunity for reasonable discovery at this stage of the litigation, granting Defendants' motion as one for summary judgment on the issue of exhaustion would not be appropriate. *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 448–49.

Defendants argue in their reply that "[d]iscovery would not change the fact that Plaintiff failed to properly exhaust available administrative remedies prior to filing suit." ECF No. 55 at 3.

Further, Defendants state that, in connection with briefing the Motion, they have produced all records relating to Plaintiff's use of the ARP process and argue that these records demonstrate a lack of proper exhaustion. Even accepting this argument, the Court cannot find that the records and Defendants' declarations alone are sufficient to establish that the ARP process, as prescribed, was available to Plaintiff, when Plaintiff alleges in his pleadings and in the ARP forms themselves that he was hindered in his efforts to follow the process "through no fault of his own[.]" *Moore*, 517 F.3d at 725. Plaintiff is entitled to seek evidence in support of his allegations through discovery.

Additionally, Defendants argue that Plaintiff failed to employ the ARP process properly from the very start by failing to file an ARP within 30 days of being assigned to cell B-D403. ECF No. 43-1 at 11; ECF No. 55 at 4. The Court is not persuaded. A prisoner is required to file an ARP request within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident, "whichever is later[.]" COMAR 12.02.28.09(B). Here, Plaintiff alleges that the incidents involving assignment to a cell with a leaking and defective heater was ongoing from December 8, 2021, to February 17, 2022, "during the coldest months of the year," which culminated in Plaintiff being electrocuted on February 3, 2022, and the denial of medical attention for several days thereafter. Plaintiff filed his first ARP form complaining of the relevant incident the same date of his alleged electrocution.

Accordingly, Defendants' motion for summary judgment as to administrative exhaustion is denied.

### B. Official-Capacity Claims in Counts II and V

Plaintiff asserts claims against Wright, Olatunji, Odufoye, Bunn, Dabiri, Hinneh, and Myles (collectively, "Correctional Defendants") in their official capacities based upon his

conditions of confinement and denial of adequate medical care at JCI between December 8, 2021, and February 17, 2022. Am. Compl. ¶¶ 51–57, 72–78. Plaintiff alleges in Count II of the Amended Complaint that Correctional Defendants were deliberately indifferent to Plaintiff's inhumane conditions of confinement, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. Am. Compl. ¶¶ 43–57 (incorporating allegations from Count I). He alleges in Count V that Myles and Odufoye were deliberately indifferent to Plaintiff's serious medical need after he was electrocuted, in violation of the Eighth and Fourteenth Amendments. Am. Compl. ¶¶ 72–78.

Defendants move to dismiss Counts II and V, arguing that they are immune from suit in their official capacities under § 1983 and that Plaintiff is not entitled to injunctive relief. ECF No. 43-1 at 7–8, 12–16. In opposition, Plaintiff argues that his official-capacity claims against Correctional Defendants must be sustained because he seeks injunctive relief under the Ex Parte Young exception. Defendants reply that the *Ex Parte Young* exception does not apply because that Plaintiff does not allege a continuing violation. ECF No. 55 at 8–10.[3] The Court finds that Defendants are correct.

---

[3]     Defendants do not argue that Plaintiff fails to allege sufficient facts to state plausible claims for deliberate indifference. Thus, Defendants do not challenge the claims asserted against Correctional Defendants for deliberate indifference in their individual capacities in Counts I and IV, apart from their argument that Plaintiff failed to exhaust. *See* Part IV.A, *supra*. Accordingly, these counts shall survive the Motion.

Defendants dispute the merits of Plaintiff's claim that he was denied adequate medical attention following his alleged electrocution. They contend that Plaintiff "received medical attention on multiple occasions following the alleged electrocution[,]" ECF No. 43-1 at 14, and that "never sought medical attention for any injuries attributable to his confinement in cell B-D403." ECF No. 55 at 6. In support of their arguments, Defendants present a large compilation of Plaintiff's medical records with the declaration of a records custodian. ECF Nos. 44 & 55-5.

The Court declines to consider these exhibits on a motion to dismiss and declines to convert the motion to one for summary judgment. The Amended Complaint alleges that the full extent of Plaintiff's injuries is presently unknown due to the alleged denial of adequate medical attention, Am. Compl. ¶ 42, and Plaintiff's Rule 56(d) declaration specifies his need for discovery on his medical status, ECF No. 52-

Title 42, United States Code, Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  The U.S. Court of Appeals for the Fourth Circuit has held that "neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." *Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see also Will*, 491 U.S. at 71 ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Does 1–22 v. Bd. of Educ. of Prince George's Cnty.*, 644 F. Supp. 3d 149, 157–58 (D. Md. 2022). Indeed, under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Amison v. George Mason Univ.*, No. 23-1042, 2023 WL 8946774, at *2 (4th Cir. Dec. 28, 2023) (per curiam) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). The State of Maryland is immune has not waived sovereign immunity from such suits in federal court. *See, e.g.*, *Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 495 (D. Md. 2015).

The *Ex Parte Young* doctrine provides an exception to Eleventh Amendment immunity in cases where a plaintiff seeks injunctive relief against state officials. *See Ex Parte Young*, 209 U.S. 123 (1908). This exception "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 163 (4th

---

1, ¶ 7. The Court finds it would be inappropriate to enter judgment on these matters without providing an opportunity for reasonable discovery.

Cir. 2023) (citing *Ex Parte Young*, 209 U.S. at 159. "To satisfy this exception, 'a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* at 163–64 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)).

Here, the *Ex Parte Young* exception does not apply to Plaintiff's official-capacity claims for conditions of confinement and inadequate medical care because Plaintiff does not allege any ongoing violation of the Eighth Amendment. The Amended Complaint does not allege that Plaintiff suffered any inhumane conditions or denial of necessary medical attention at any point after February 2022. Thus, there is no continuing Eighth Amendment violation to enjoin, and Correctional Defendants, in their official capacities, are entitled to Eleventh Amendment immunity from any suit for damages based on past violations. Therefore, Counts II and V must be dismissed without prejudice.[4]

### C.  Claims Against DPSCS, Scruggs, Morgan, and Dean in Counts III and VI

Plaintiff also asserts claims against DPSCS, Secretary Scruggs, Commissioner Morgan, and Warden Dean based upon his conditions of confinement and denial of adequate medical care at JCI. Am. Compl. ¶¶ 58–65, 79–84. Plaintiff alleges in Count III of the Amended Complaint that DPSCS applied policies that "failed to ensure humane living conditions for prisoners at JCI," including "housing prisoners in condemned cells and failing to respond to maintenance requests in a timely manner." *Id.* ¶ 60. Plaintiff alleges that these acts were part of a "widespread municipal

---

[4]     As pleaded in Counts I and IV, Plaintiff may pursue § 1983 claims against Correctional Defendants in their *individual* capacities for violations of the Eighth and Fourteenth Amendments in which they personally participated. Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) ("[L]iability is personal, based upon each defendant's own constitutional violations); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (dismissing claim for willful denial of medical care when plaintiff was unable to show that the official charged acted personally in the deprivation of rights).

policy," *id*. 61, of which his injuries are a "direct and proximate result," *id*. 63. In Count VI, Plaintiff alleges that DSPCS applied policies and practices that failed to provide Plaintiff with adequate medical care. *Id.* ¶ 80. Plaintiff alleges that these policies included ignoring requests for medical attention made by inmates, with a potential for "serious health consequences." *Id*. Plaintiff argues that these policies violated inmates' right to emergency medical treatment on a 24-hour basis. *Id*. Plaintiff alleges that his injuries were directly and proximately caused by these policies. *Id* ¶ 83.

Defendants argue Defendants DPSCS, Scruggs, Morgan, and Dean are subject to dismissal from the case because they immune from suit under the Eleventh Amendment and, further, DPSCS is not a "person" subject to suit under § 1983. ECF No. 43-1 at 7–8. Plaintiff concedes the latter point, *see* ECF No. 52 at 18, but argues that the alleged "ratification" of "certain policies and procedures" by Scruggs, Morgan, and Dean makes them liable for the constitutional violations arising from his conditions of confinement and denial of medical care at JCI. *Id.* at 19–21. In reply, Defendants argue that Plaintiff fails allege sufficient facts to state any claim for relief against Scruggs, Morgan, and Dean. ECF No. 55 at 10–12. The Court agrees with Defendants.

A § 1983 claim may be premised on the unconstitutional actions of individuals executing an official policy that resulted in a deprivation of the plaintiff's federal rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). An official policy may include "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). *Monell* claims consist of two components: (1) a policy or custom (2) that caused a violation of the plaintiff's federal rights. *See Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997).

Plaintiff fails to allege sufficient facts to state a plausible *Monell* claim. He alleges in formulaic and conclusory fashion that DPSCS "maintained, enforced, tolerated, ratified, permitted, acquiesced to, promulgated, and applied policies, practices, and customs" that resulted in his alleged inhumane conditions of confinement and denial of adequate medical care. Am. Compl. ¶¶ 60, 80. Plaintiff makes further unsupported and conclusory allegations that Scruggs, Morgan, and Dean were involved in, and ratified, the alleged policies, and that the policies were "widespread." *Id.* ¶¶ 61, 81. But Plaintiff fails to identify any such policies with any level of specificity, nor does he allege facts to suggest that any such policies exist. He does not even identify any other person incarcerated at JCI or any other DPSCS facility that suffered unconstitutional conditions of conferment or denial of medical attention as a result of the policies ratified by Scruggs, Morgan, and Dean. Insofar as Plaintiff seeks to assert Monell claims against these Defendants based on his conditions of confinement or denial of adequate medical care, those claims fail and must be dismissed.

Plaintiff similarly fails to allege sufficient facts to state a plausible claim that Scruggs, Morgan, and Dean are liable as supervisors of Correctional Defendants. To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that a subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Here, Plaintiff does not allege that

Scruggs, Morgan, or Dean had actual or constructive knowledge that Plaintiff was subjected to inhumane conditions of confinement or denial of adequate medical care. Nor does Plaintiff allege Scruggs, Morgan, or Dean responded in a manner that evinced deliberate indifference or tacit authorization of responsible prison staff.

For the foregoing reasons, Defendants' Motion shall be granted as to Counts III and VI, and these counts shall be dismissed without prejudice.

### D. First Amendment Retaliation Claim in Count VII

In Count VII, Plaintiff asserts claims against all Defendants, known and unknown, for retaliation in violation of the First Amendment. Am. Compl. ¶¶ 85–89. Specifically, Plaintiff alleges that Defendants retaliated against him after he filed administrative remedy requests, inmate complaint forms, and his original *pro se* complaint in this action. ¶ 87. Specifically, Plaintiff alleges that Defendants retaliated by "withholding necessary medical supplies, personal property, and privileges given to other inmates, tampering with his mail; and ultimately, transferring him to a higher security prison." *Id.* Plaintiff alleges that, given the proximity in time from when he filed his original complaint to when he was transferred (mere days apart), the transfer appears to be retaliation for Plaintiff exercising his First Amendment right to seek relief. *Id.* ¶ 88. Plaintiff seeks to enjoin such alleged retaliatory actions. Defendants argue that Plaintiff does not allege "sufficient facts to show that these actions . . . were retaliatory and not coincidental." ECF No. 43-1 at 9–10. The Court agrees and finds Plaintiff's retaliation claim subject to dismissal for insufficient pleading.

"The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (quoting *Martin*

*v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)). To state a plausible claim for retaliation in violation of the First Amendment, "a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant[s'] conduct." *Id.* (quoting *Martin*, 858 F.3d at 249).

Here, Plaintiff alleges sufficient facts that he engaged in First Amendment activity by seeking redress for his grievances, both within JCI and by filing suit in this Court. "[F]iling grievances is a protected activity." *Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024) (citing *Martin*, 858 F.3d at 249); *see also Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017) ("[I]f an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional."). Additionally, "[t]he First Amendment protects the right 'to petition the Government for a redress of grievances,'" *Kirby v. City of Elizabeth City*, 388 F.3d 440, 448 (4th Cir. 2004) (quoting U.S. Const. amend. I), and the Supreme Court has recognized that prisoners retain this right while they are incarcerated, *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[P]risoners retain the constitutional right to petition the government for the redress of grievances....").

Plaintiff also alleges that adverse actions were taken against him after he engaged in protected activity, including transfer to a higher-level security prison than warranted. Am. Compl. ¶ 41. "[A] transfer or placement in a more restrictive or dangerous setting can constitute an adverse action" if such transfer "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Jones*, 90 F.4th at 214–15.

However, Plaintiff falls short of alleging a plausible causal relationship between his protected activity and Defendants' adverse actions. To make a prima facie showing of causation,

the plaintiff must demonstrate "(1) that the defendant[s were] aware of [his] engaging in protected activity" and (2) "some degree of temporal proximity to suggest a causal connection." *Id.* at 130–31 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)). Here, Plaintiff's transfer from JCI was sufficiently close in time to the filing of this action, occurring just within days. But Plaintiff does not allege any facts to suggest that any particular Defendant responsible for the transfer was aware of the lawsuit before deciding to transfer him, or that any Defendant responsible for any of the retaliatory acts alleged in the Amended Complaint were aware of Plaintiff's grievances or of this litigation. Moreover, Plaintiff does not allege any other facts to support a reasonable inference that any of the allegedly retaliatory acts were caused by Plaintiff's filing of grievances or filing of this suit.

Thus, Plaintiff fails to state a plausible claim for First Amendment retaliation. Count VII shall be dismissed without prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion will be granted in part and denied in part. Counts II, III, V, VI, and VII will be dismissed without prejudice. The Motion will be denied as to Counts I and IV.

A separate Order shall issue.


DATE: September 26, 2024                      _____/S/_____
                                              Matthew J. Maddox
                                              United States District Judge